My name is Craig Spiegel. I represent Plaintiff Buckley and the putative class. We're here today to ask the Court to reverse the District Judge's ruling denying our motion for class certification. The District Judge ruled that individual issues regarding the element of causation predominate over common issues for the putative class of Washington-only residents for their claims under the Washington Consumer Protection Act. Now, there is one, I would like to spend just a minute on an issue raised by Countrywide in its brief about whether the Rule 23-F petition was improvidently granted. And there is one minor discrete respect in which we think that may be the case upon reflection, and that is this, that goes to the issue of whether disclosures must be in writing. And the reason we're concerned about whether that is properly before the Court, given the narrow review afforded by Rule 23-F, is that that issue goes to Mr. Buckley's individual claim just as much as it goes to the class claim. And, Justice, we would object if Countrywide argued that the motion to dismiss was ruled upon incorrectly by the district court. The issue of whether a written disclosure is required is an issue that goes to Mr. Buckley's claim. They assert that he got some oral notice. We disagree with that very much. So today what I will focus on with the understanding, we're not waiving in the district court any argument about written disclosures, is what's clearly, we think, before this Court under Rule 23-F, and that is the district court's ruling based on its understanding of Washington law that oral disclosures would satisfy any duty of Countrywide to tell borrowers about change terms, that under that understanding a class cannot be certified because individual issues of causation predominate. Now, under, the district court had a disadvantage, let's say, in that the court, when it ruled, was relying on a Washington Supreme Court decision in Schnall that's no longer the law in Washington. That 2010 opinion was withdrawn. In fact, as the panel, I'm sure, is fully aware, our briefing was based on that 2010 decision. But in 2011, early in the year, the Washington Supreme Court withdrew that opinion and issued a new one. And what the Washington Supreme Court said in that case is for causation, the plaintiffs need to show that the injury would not have happened if not for the defendant's violative acts. And they said that the trial judge in that case focused too heavily on reliance, that reliance is not required. Now, under that statement in Schnall about what a plaintiff must prove, our theory is quite simple. Plaintiffs and the class members were given certain terms in their initial written disclosures. They arrived at closing to find different terms. That violates the law. That is our theory in this case. That is the theory that the court, the district judge, said we adequately alleged in our complaint when it denied the motion to dismiss. So the question becomes, did the district court erroneously rule that the possibility of oral disclosure sometime before closing of new terms means that individual issues predominate over common ones? And we believe not, given the evidence submitted by the defendants on that issue of alleged oral disclosures. We submitted a large number of files, evidence from files that we obtained from Countrywide, that showed that a number of plaintiffs, over 60 out of the 200 files we received, were given certain terms at the initial disclosures and then received worse terms at the closing. And they had no knowledge before that time, based on the record evidence that we obtained from Countrywide. There was no evidence of any kind in those documents of oral disclosures. There were no call logs showing oral disclosures. There was no evidence submitted to us during discovery of any oral disclosure to any putative class member or to Mr. Buckley himself at any time before closing. There were files that contained new written disclosures, and based on those written disclosures, we do not include them in the class. But Countrywide says, based on three declarations that they submitted, that they gave oral notice. It was their practice. Your Honors have seen the language in those declarations. But what's key for us is that nowhere in the record, in the trial court, in this court, at any point, is there any evidence about individual disclosures to an individual class member. I'm sorry. I'm having a little trouble following the argument. Yes. You're saying that they submit declarations saying it was their practice to have oral disclosures. Generically, yes. Yeah. And now you're saying there's no evidence in the record that there were oral disclosures. To any individual of any kind, even though that's What does their declaration mean? All it means is that if that is what they intend to present at trial, we can deal with that in a day or a few hours. And we can point out that they have call logs, and yet there is no call log been submitted of any kind showing that there were any disclosures made to anyone, let alone that the borrower agreed to those changes. You have these generic statements. Like, we do this. One woman says, I did about 1,500 of these. So then the class should be drawn in a way which says the members of the class are people who did not receive any oral disclosures. Timely disclosure and consent to them. And then if the class is drawn that way, you don't have to be concerned about individualized proof. Proof in individual cases, if in fact they wouldn't be members of the class. Is that the argument? It is the argument that if the class would not include people who actually received oral disclosures, based on the district court's ruling that Washington law allows oral disclosures. And you're not I didn't quite understand how you started. But you're not contending in this case at all that a that a written disclosure is necessary to amend the initial written disclosure. We are claiming that. But given that this is a Rule 23F appeal and not an appeal at the end of the case in which we could raise any issue, that the cases are very clear that the court wants to focus on class certification law. We do believe that written disclosures were necessary. Ninety-seven percent, according to one of the witnesses. You're taking those people aside. Yes. The people who got telephone calls in which there were further terms set or modifications or whatever one wants, characterize it. They're not going to be a part of this class. That's correct. Under that understanding. Correct. That's right. If they got the notification. The individualized, the bugaboo of individualized issues predominating over class act, common issues, won't be existent. Well, that's correct. If they show it. But there has been no showing this to anyone. Our problem is the district judge said, well, because they have these three declarations, we have to inquire as to every name, every plaintiff and every class member. Therefore, we can't certify a class. Well, but isn't that, if they say it was their practice in doing so, in having discussions with these people, oral disclosures, at some point to determine whether somebody is a member of the class, isn't it individualized? I did get calls. I didn't get calls. What is the evidence of a call? What is not the evidence? What is the evidence of no calls? But that's the problem, Your Honor. In most class cases, what we're used to as class representatives of the plaintiffs is evidence that there were call logs. See, here's information in the record. We can show you that this is going to take a long time to get through this case because we have a lot of evidence of individual disclosure. You say there are all these class members, but here's a call log showing that we told this person. Here's a call log showing we told that person. Even though there are call logs, even though Countrywide keeps those call logs, even though Countrywide does issue written redisclosures to people, there is no evidence other than this vague testimony, well, that's our practice. That's what we do. So you're saying the call logs are inconsistent, or at least do not tend to establish the truth of the, and I'm not saying somebody's false, I'm just saying the truth of the declaration. Exactly. And we can, if those witnesses get up on the stand, we can, and that is their testimony. Then we can take care of that rather quickly. So we don't have any call logs to back that up. In fact, you say there are oral disclosures. Well, in fact, you give written disclosure all the time, don't you? The question at this point is, will the volume of individualized evidence be greater than the time spent on common issues? It's like in the Arthur Young case we discussed. It's like there's no evidence, none, that we are going to sit there looking at call logs, seeing testimony. All we know at this point is that they will put on three witnesses to say, that's our practice. And we'll get up there and say, no call logs, even though you have call logs, page 408 of the Exodus of the Record, 208, excuse me, the call logs for the plaintiff, Plaintiff Buckley. Every call log, every point in there says N.A., N.A., N.A., not applicable. If they had evidence that they had actually given these disclosures, we should know at the question stage. I mean, they have some evidence, but this is more evidence. Specific evidence of what was told to whom when. And we have nothing about that. Like in Arthur Young, a panel of this circuit said, we have no evidence that there's going to be a great volume of testimony, a volume of evidence that's going to be submitted that's going to swamp the common issues, predominate over the common issues. That's where we are here. We have three people. They have three affidavits that say most of these people in the class will have received phone calls. And you will then have to see whether they really did and what was said. That's what their affidavit said. Well, but as it stands now, it's easy to deal with that. I mean, when they don't come in and say, I think that the Court is used to seeing boxes of documents showing a trial judge that this class trial is going to take a year or two years or three years because of all this information that we're going to have to look at. Suppose they say we estimate that. How many people are in this class? Do you have any idea? We estimate 30,000. Suppose they have affidavits that say based on our practice that we have established and that a number of our people say they implement it, we anticipate that there will be 20,000 people who the Court will have to examine to see whether they got the calls and what went on in the calls. Would that be enough? I don't believe so for this reason. Because where are they pulling that from? They keep records. They keep call-offs. So you're saying it's not credible. It's not credible, exactly. So would you then be satisfied at this stage if we were to remand for fact-finding by the district judge as to whether or not those declarations are credible? And if the judge says, you know, actually I find that there was evidence, is evidence that I believe that there were individualized calls made, then we're back to where she was. But you're saying I'd like some fact-finding from her as to whether or not those declarations are credible. At minimum, we'd like that. But in addition, Your Honor, let's say they come forward with 10 call-offs. Does that satisfy the idea that individual issues predominate, that we just say, fine, they're not in the class? Well, but then, yeah, but then you're going through an exercise where you have 30,000 people, and every time they come in with a call-off, you say, okay, we're keeping that person out and that person out. So now we have 10,000 people or 5,000 people. At some point, when you start going through these people, it becomes individualized issues. It may well. But I think that goes back to Judge Fletcher's question, is that at this point there's just nothing to show that. There's no way to know what the other two were about. In other words, going back to the district court and saying, okay, find out whether or not. They say it's their practice. And by practice, number one, find out, does that mean in most cases, in every case, or in some cases? Find out what it means to say their practice. Number two is, is there reason to believe that that testimony is correct? Is it corroborated some way? Number of people? Whatever. Anything can be corroborated. But is it credible? And therefore, if it's credible and it's substantial, then isn't it a problem of individualized cases? Then it may well be at that point, Your Honor. But, yes, I think that's a reasonable way to proceed. We think at this point, though, there's just nothing along those lines. I could say to this Court that based on the record, the Court should reverse and direct the district court to grant class eradication, but we all know class eradication can be revisited. So the chances are we may do it. So in the end, it probably doesn't matter which way they go. But, you know, that would satisfy, at least we could look and see, well, what is the basis of this? Why are you saying this? We just think it would be very bad precedent for a defendant to say, that's their practice, most of them got it, they didn't do it. There should be records to back that up and to make it credible. And, of course, at the class eradication stage, the judge wouldn't in the end decide that, because that really is a merits issue about whether disclosure was given. But the judge could say, I've seen that there's a slew of evidence out there that's just going to swamp common questions. Or the judge might say, oh, we can deal with that. Yeah, we can deal with that. They go around saying we've got a problem. I've got a problem. That ---- I'll try again just so I can understand this case. Yes. Do I understand that you're never going to take the position that any modification to the initial disclosure has to be in writing? No. And if I may follow through, and I hope I can make it clear what my position is. At this stage, the district judge has ruled against us on that in the opinion you saw. We think that the records may well show additional evidence, like evidence we have as to Plaintiff Buckley, where his papers show that it says for one thing his rates never go up, but another important thing is he was a refinance. He already had a contract that said notices will be in writing. Therefore, it's reasonable for him to expect that any notices will be in writing. One of their witnesses, a Mr. Alvarado, said that 97 percent of what he wrote for loans were refinances. We don't ---- so we are not conceding that issue. It's just that we have a problem on this appeal, on the limited Rule 23-F appeal, saying to the Court that the Court can review just any substantive, underlying substantive decision. We think the cases are clear that the appellate panel does not go look at any ---- it's not as if Rule 23-F appeal allows the appellate panel to look at any issue in the case. We would stand up here and we would argue that they can't raise the issue of whether the district judge ruled correctly on the motion to dismiss. This is the issue of whether writing is required. There seems to be a substantive ruling that we just think we have to accept for personal disappeal. But we're not waiving that issue. Well, also, maybe this is just out of curiosity, you aren't going to ever contend that even a new mortgage that ---- in which there has been a disclosure originally, initially, that that cannot be given any change in terms, can't be given orally in view of the contract, which says that any notice in connection with this mortgage must be in writing? We will contend that. At this point, the district judge has disagreed with us, and so we will have to find some method to raise it again with the district judge. But we have made one attempt at that and were rebuffed by the district judge. So we may well have an appeal if we ever came up at the end of a case winning or losing and we came back up on a full appeal, we may well be arguing that through this panel or another panel. But we just think today is probably not the day we can do that. If you had asked that that be the class, just the ones that had received written notice and didn't subsequently receive written notice, have you ---- if that were the appeal, whether that constitutes a class, you could then have raised it? Well, if we think in that case that the district judge had ruled, that's not ---- we asked for a class of anyone who received different terms, written terms of closure than they received initially. And so that ---- our bottom line argument was that it had to be in writing. The district judge rebuffed us on that, on the law, the substantive law. Now, maybe I'm wrong on this, and maybe the Court can resolve that substantive dispute. We just didn't think that was the case, and we didn't think we had to go that far because we believe even if oral disclosures are enough, we don't think in the end the record is going to show there were oral disclosures. Okay. Is that ---- I hope I answered your question, Your Honor. Yes. Okay. I see my time is up unless ---- thank you. Good afternoon, Your Honors. Thomas Heffron for Defendant Countrywide. Your Honors, a mortgage loan is a contract entered into between a borrower and a lender. There is nothing about federal law that requires that the terms of that be reduced to writing or that there be any sort of written trail of the negotiation history of a mortgage loan. There was only one set of evidence before the district court about how that transaction unfolds, and the evidence was undisputed, and plaintiffs made no objection to the declarations below. The evidence was undisputed that at the time a borrower applies for a loan, the countrywide representatives discuss a range of options. The borrower selects one of those options. The borrower receives certain federal written preliminary disclosures whose purpose is to allow the consumer to shop. Thereafter, the evidence was undisputed. Several things can happen during the course of the time between application and closing. One thing that happens is borrowers many times, the evidence was many times, change their minds. They decide ---- Well, can I get to this? When you say undisputed, was it undisputed that it was the practice of Countrywide to engage in these particularized conversations? Undisputed. Undisputed. Undisputed. Okay. So you're saying taking the undisputed facts, the individualized ---- since it was the practice, that was undisputed, then the individualized issues predominate. That's correct. It was undisputed that borrowers many times changed their mind. Obviously, in those circumstances, they clearly knew there was going to be a different ----  Sure. Right. By telephone conversations, borrowers inbound saying, I changed my mind, or outbound ---- But the issue is not whether the borrowers changed their mind. The issue is whether or not you've changed the terms of the loan. Right. And then ---- Talk about that instead of whether the borrowers changed their minds. Well, sure. But the problem we're trying to identify, I guess, from my standpoint, is how could the court try on a class-wide basis this claim? And in other words, the loan has changed. And in order to figure out situations where Countrywide changed the loan versus the borrower changed the loan, you would have to go person to person to find out why it changed. And I was trying to illustrate that sometimes it changed because the borrower asked. Other times it was because Countrywide required it because, for example, the borrower no longer qualified, as it turned out, for the loan that he or she wanted. So, for example, their credit score was worse than what they had said or their appraisal was low. Yeah. You know, I guess I have trouble understanding. I guess I may get it clarified in rebuttal. When you say undisputed, there was nothing, in your view, there was nothing in the district court that said, you know, these are all general declarations. We just don't think this is enough. We want something more than that. For example, if these conversations took place, we would expect phone logs. Was nothing like that ever said to the district court? No, Your Honor. The plaintiff's theory below was that it was required to be ---- any change was required to be disclosed in writing. That was their position. And the reason is because they knew, I would propose, they knew that if that was not required, a written re-disclosure was not required, then there would need to be an examination, person to person, about why the change occurred and whether orally it had been discussed with the borrower. And so they tried to take that factor out of it by saying it has to be re-disclosed in writing. And we had that fight. And as my counsel, my brother acknowledges, Judge Sobroad ruled against the plaintiffs on that point. So then the court went on and said, okay, can this case be tried on a class-wide basis? And the court said because there's no written re-disclosure requirement, the question of whether there was an unfair business practice, a deceptive business practice is going to require all the borrowers to come forth and explain whether they knew about the change. Because sometimes they asked for it, and sometimes it was orally, you know, disclosed to them during the course of these conversations. There was no dispute that the conversation, there was no dispute that Is there no dispute that in every case, or I don't know, every case may overstate it, but let's just talk about every case for a minute, in which the resulting loan is different from the original loan, there was an oral communication, whether initiated by the borrower or by the lender, in which these different terms were discussed. Are you saying that's undisputed? I'm saying that the declarations was it was country-wise practice to do it, and that these people who were both loan representatives and supervisors, that they did it, and the person they supervised did it. Okay. So I just think that I have to find out what you mean by practice. Because practice can mean in every case. It can mean in most cases. It can mean maybe even in less than most cases if certain other things happen, you know, certain other things happen. So that's what I think. The declaration, the key declaration, which is Ms. Kuyper's, which is that excerpt of record 88 to 92. It says, I and other CHL originators were expected to inform the customers of the changes. I and other CHL originators with whom I worked and supervised did this, typically over the phone, and secured the customer's agreement to the changes. Changes in loan products or terms were regularly disclosed to and consented to by the customer in oral communications between the customer and loan originator occurring in advance of closing. And the district court was never asked. I mean, I'm coming off of the argument I just heard from the other side. Was never asked, well, wait a minute, isn't there any corroboration? I mean, this was never raised in the district court? No, Your Honor. Not that I recall. Not that I recall? No. Were you there? Yes, I was, Your Honor. Okay. So I hope you remember well. I hope I remember well. Was that ever raised in the district court? Wait a minute. These are just generalized declarations. They have lots of call logs for lots of things. You would expect there would be call logs for these. Was that never even mentioned in the district court? No, Your Honor. After plaintiffs lost the motion, they went to Judge Zabra and said we want to take discovery about those things. And the court said an appeal had already been taken and allowed. And so it was, I think, in the fall of that year, the allowance of this appeal was, I believe, in July of that year. And the plaintiffs came to the court and said we'd like to take discovery of that evidence. And the court said, no, we're going to stay the case and let this panel decide whether or not, based on the record that was before the court, that the plaintiffs may, whether or not the plaintiffs had borne the burden of proving class certification. As to the issue of call logs. Was the proposed discovery to determine whether the declaration was accurate or was the proposed discovery for some other purpose? I don't recall the details quite, Your Honor, on it. But I think it was, my recollection is it was to take discovery about training procedures and about policies and procedures by the company that would look into oral disclosures. Well, so it was geared to a challenge of whether the practice was effective. It was effectively, I suppose, geared towards the hope of an eventual motion for reconsideration of the class certification denial or a re-urging of a new motion for class certification. And you're saying that this, this request for additional discovery postdated the notice of appeal. I believe so, Your Honor. That's my recollection. We have the docket sheet in front of the Court, so that would be reflected in the docket sheet. And the, I think the call log issue in particular was not even discussed. There's no evidence whatsoever in front of the Court about whether other people kept call logs or what the significance of the call logs were. I would point out that actually the call logs, the only evidence before this Court in the call logs is the call logs weren't obviously followed by Mr. Alvarado, who talked to Mr. Buckley, because according to the call logs there, Mr. Alvarado and Mr. Buckley never spoke. Because all the, next to all the spaces for call, it says N.A. Obviously, they did speak. And so the only evidence that was before the Court would be the call logs. Why do you say obviously they did speak? Mr. Alvarado and Mr. Buckley, in order to do the loan, they spoke. But what I'm saying is the only call log before the Court was the one reflecting this loan, and it indicated there had never, ever been a conversation, which everybody agrees there were conversations. Even at the beginning, it indicates there was no beginning conversation. Mr. Alvarado didn't fill out the call log. And so I ---- That suggests, then, the practice of country right is that they are pretty bad record keepers. Well, it suggests that certainly Mr. Alvarado didn't keep records of this particular conversation. And it may well be the evidence would be that the loan representatives typically did not keep records of those conversations. That doesn't mean they didn't happen. Plaintiffs seem to believe that just because it's not written down, it didn't happen. Many contracts, most contracts are negotiated orally, and then it ripens into an ultimate document. And what we suggest is the evidence ---- the only evidence here before Judge Sobral was that that's exactly what happens, and that the fact that there's no other documents, no corroboration, is because these things are done orally. And the only evidence that was put before the Court was these declarations that said this is done orally. And so the Court naturally said in order to prove causation, which in Washington requires but for causation, in order to prove causation, everybody's going to need to testify. Was there any testimony or evidence about whether people like Mr. Alvarado or people generally were instructed to keep call logs? No. No testimony at all about the call logs one way or the other. But as Judge Sobral correctly pointed out, the question would be to put people on the stand and see what they understood and what they recalled. Mr. Alvarado said, I don't recall Mr. Buckley. I don't recall that transaction. But my practice was actually consistent with the declarations. My practice was that whenever there's a change, I orally call the person up and explain the change and explain why the loan has changed and I give them an opportunity to consent to the change or walk away or seek some other arrangement. And that I believe I would have followed that practice in this instance, though I don't recall it. That's the kind of discussion and debate which needs to be put before a jury, as Judge Sobral correctly held. And under Rule 406 would be something that Mr. Alvarado could testify to and Countryweb could rely upon as evidence of actual discussions. Now, whether the jury would believe that in light of Mr. Buckley is going to depend on how they found Mr. Buckley and Mr. Alvarado and which one they found more credible, whether there's other documentary evidence, all that kind of thing. I have no doubt that there could be a factual dispute about that. But ultimately, that would have to be repeated 20,000, 30,000 times. And that's what our position is and that's what Judge Sobral found. Each borrower would have to come and testify about the entire mix of information in light of what the record was, which it was undisputed that those conversations take place orally. So therefore, in light of the evidence, in light of the record, Judge Sobral correctly found that the class should be denied. Ultimately, under the Washington Consumer Protection Act, in order to show, in order to recover, the borrower has to show but-for causation. And so, but-for causation, and you look at the cases like Indoor Billboard and others, but-for causation is going to require a jury to sit down and listen to what happened. And that's really why Judge Sobral correctly ruled in this case. I just want to make one last point about the significance of the Schnall case. And the Schnall case, which was a Washington Supreme Court case, came down on the issue of the proper construction of the causation standard under the Washington Consumer Protection Act. It came down, as my brother counsel correctly stated, it came down shortly before the classification argument. It was then withdrawn, and a new opinion substituted in its place. But that new opinion doesn't have an effect on undermining the ruling here at all. And the reason is because the new opinion said, well, it basically said, well, look at Indoor Billboard, which is the prior ruling. And Indoor Billboard said that in order to figure out causation under the Washington Consumer Protection Act, go with the pattern jury instruction. And so all Schnall said was go with the pattern jury instruction. And the pattern jury instruction, which is WPI 15.01, is but-for causation. And that was the test that the district court was applying here, and correctly applying it to say that you need individualized evidence. So the class was properly denied. If there's no further questions. Thank you. Thank you. I'd like to focus first on this undisputed evidence. This is ‑‑ it is disputed in two ways. It's disputed on the merits and the three declarations, and it's disputed as to whether it suffices for a denial of class or ‑‑ Well, I think the question is, was it disputed? I mean, I understand you're up here now disputing it. Yes. But the question is, at the time that the judge had the certification motion before the court, was it disputed? Yes. Here's our problem. Neither in initial disclosures nor in response to discovery requests asking the defendant to tell us the names of people who had information relevant to the case were these three people disclosed. So during ‑‑ we had no idea. They raised the issue of oral disclosures in their response to class search. Our motion. In response. Okay. So then you had oral argument. We had oral argument. You had oral argument. Did you, either before oral argument or during oral argument, did you say, by the way, we dispute this? This is a ‑‑ My only honest answer is I don't know, Your Honor. It wasn't there. But I do want to point out that. Do we have a transcript of that? Yes, we do. You went there, and you can't remember what's in the transcript, I guess? I don't remember what's in it. I've read it. I don't remember. That's the only honest answer I can give you. Was it someone from your office? Yes. Yes. It was. Let me point out, as soon as the judge ruled on that ground, we did ‑‑ we have sought discovery of that. We didn't know. Well, let me say as soon as. That's not quite the timetable I'm getting. The timetable I'm getting was the judge ruled on that ground. Yes. You filed your notice of appeal, and then you went back to the court, as I understand it. And this may be wrong. And sought a digital discovery. Well, we were doing both at the same time. We didn't know. Well, I mean, that's not happening. No, no. They were pending at the same time, our discovery request and the Rule 23 application. We were pursuing both avenues. And then the 23-F petition was granted. Did you make a motion for reconsideration? We have not, because at that point the Rule 23-F petition was granted, so we heard. But regardless of what the court does, we will ask for that. We think that the correct result here is to send it back along the grounds that were discussed earlier so we can do what should have been done before. We could have, when they submitted their opposition, said, Your Honor, will you hold this? We've never heard of these people. We haven't had a chance to do that. But that's not a bad idea, given the fact that, you know, judges up here spend all this time going through all this, dealing with this, and then the district court judge didn't even face that issue. I mean, you know, everybody tries to get it right, but it's sort of the lawyer's obligation to point out what's wrong with the other side before the judge makes up, you know, the court's mind. I understand what you're saying, Your Honor. I understand that. I will have to go back and look at the transcript. I apologize for not knowing, but don't get me out of my senses. I don't. And I'm not sure. There comes a point at which in ordinary appeals, once the case is up on appeal, the district judge simply has no further jurisdiction. I don't know what the hell that rule operates with a 25-F when there's a request, and in order for that to go forward, it has to be granted by us. So I don't know when the district court judge approves the jurisdiction. Is it discretionary, Your Honor? The law, the consistent law that I have read says that during a 23-F petition, even after granted, the district court can continue to rule, and the judge decided in his discretion, I understand it, to say, well, it's just late. Let's not do anything until we see. Well, it is stayed, but not because it had to be, as I understand the law. I think your opponents ask that we reverse our decision to accept this appeal as improvidently granted. Yes. Where would that put you? Right back in the district court, and we pursue our discovery request and ask the court to reconsider its class certification ruling. Would that satisfy you? It would help a lot to have a ruling say the court needs to do that, that the evidence submitted. No, I don't think it would, because I don't think it was improvidently granted. If I may take three more seconds to explain why. Even as that evidence is submitted, I do not know of any case where a court has denied class cert just based on generalized statements in three or four paragraphs. It was the practice. If the evidence showed that, indeed, the practice defined what the practice was, that is, we followed it, we told our employees to do this, to do that, that this is the practice, and, by the way, we have either enforcement or we check on this or whatever it is, well, then there we go. I mean, if that's it. Could be, but it was also the practice to keep call logs, and, by the way, when he says Well, that's what you're attacking. You're attacking the scope or the meaning of what it means to say the practice. You're saying that's a theory, but in practice the practice isn't done. I understand that, that argument. And, indeed, the district court can make that decision, but that wasn't really given to the district court in this case. Well, I don't know what was argued, and I will look it up. I'll let the court know. But one last thing I want to just need to make clear. When they say Mr. Alvarado did tell Mr. Buckley everything, no, he didn't. Mr. Buckley says he never told me about any changes in terms. He never called me up and told me my terms were changed from 24 months at one monthly rate down to six months. He never told me that. I never agreed. So the idea, again, that it's undisputed that Mr. Alvarado told Mr. Buckley, but he just forgot to put it in the call log, that's just, that's absolutely disputed. Just like everything else. Thank you so much for the extra time. Thank you. Case just argued will be submitted. Court will stand in recess for the day. All rise for the recess. Thank you. Thank you. Thank you.
judges: Breyer, Reinhardt, Fletcher